FILED
06/27/2025
Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs May 20, 2025

## STATE OF TENNESSEE v. RICHARD COLE

**Appeal from the Criminal Court for Knox County**
**No. 123386   G. Scott Green, Judge**

_____

## No. E2024-01254-CCA-R3-CD

_____

Defendant, Richard Cole, pleaded guilty to one count of vandalism of property valued at $2,500 or more but less than $10,000, a Class D felony, and the trial court sentenced him as a Range II offender to eight years to be served on supervised probation. A probation violation warrant was subsequently issued. Defendant admitted to the violation and after a hearing, the trial court revoked his probation and ordered his sentence to be executed. Following our review of the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and MATTHEW J. WILSON, JJ., joined.

Eric Lutton, District Public Defender; and Jonathan Harwell, Assistant District Public Defender (on appeal), Knoxville, Tennessee; and Brooke Spivey (at probation revocation hearing), Knoxville, Tennessee for the appellant, Richard L. Cole.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; Charme P. Allen, District Attorney General; and Mitch Eisenberg, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts and Procedural History*

At Defendant's guilty plea submission hearing, the State gave a factual basis for the plea and stated that on November 1, 2022, at 9:14 a.m., police officers responded to a Rural King store because a man was "on the roof yelling about wires and fuses." When they arrived, they encountered Defendant, who had "pulled the wires and fuses out of multiple units because he believed they were not set up properly and they were going to blow." Officers arrested Defendant at the scene. The damage totaled approximately $3,000.

A presentence report was prepared and admitted as an exhibit to the sentencing hearing. The report indicated that the forty-three-year-old Defendant had a lengthy criminal history, including numerous misdemeanor and felony convictions dating back to the age of seventeen. The State argued that although "[v]andalism is not typically what you would consider a dangerous offense[,]" the facts of this case made it a dangerous offense. Additionally, the State noted that Defendant admitted that he was under the influence of methamphetamines at the time of the offense. The trial court agreed, stating that Defendant was "lucky he didn't get electrocuted[.]" The presentence report showed a "high risk level for aggression on his Strong-R report." The State noted that Defendant had been revoked from probation multiple times before.

Defense counsel argued that Defendant had "a break in [his] criminal history from 2018 to 2022" and that during that time, he had successfully completed a parole sentence and the Men of Valor program and had "maintained sobriety for quite a long time." Defense counsel stated the felony vandalism charge was the result of "a relapse in [Defendant's] sobriety" and that Defendant had been "open and honest" about the charges and taken responsibility for his actions. Defense counsel suggested that Defendant had "an underlying mental health issue" and requested that the court order Defendant to complete an inpatient treatment program at Epperson Ministries in Knoxville.[1] Samantha Monday informed the court that the one-year program was faith based and that there were trained clinicians on staff.

The trial court expressed concern about Defendant's "horrible record" and the "bizarre facts" of the case, and the court reset the hearing for a mental health evaluation to be conducted. The court indicated that it was "still leaning towards sending [Defendant] to prison because of [his] record and because of what the Strong-R assessment sa[id]."

When the hearing reconvened, Dr. Sharon Burnside testified that she had been practicing psychiatry in Tennessee for twenty-seven years and had worked at the detention facility for the last four years. Dr. Burnside first saw Defendant in March 2023, approximately four months after his arrest. She interviewed him and diagnosed him with

---

[1] The transcript of the sentencing hearing states "Everson Ministries," but the judgment form and transcripts of subsequent hearings state "Epperson Ministries."

"meth induced psychosis."  She testified, "his psychotic episode in November was pretty severe."  Dr. Burnside prescribed Defendant medication and scheduled a follow-up visit. When Dr. Burnside saw Defendant in May 2023, he was "significantly better."  Defendant was "feeling less paranoid, less edgy, more glued together."  Dr. Burnside's recommendation for Defendant was to continue medication, maintain sobriety, and have "good support around him[.]"  Dr. Burnside told the court that she believed Defendant's psychosis "was strictly related to the methamphetamine use."

At the conclusion of the hearing, the court reiterated Defendant had "an awful record."  The court noted, "[t]he felony record is probably a little bit overstated because [Defendant] picked up a bunch of them in one day and they would not have counted for range enhancement, but the fact remains that [Defendant was] hardly a stranger to the court system."  The court again noted the "bizarre set of facts."  Nevertheless, the trial judge stated that he was "going to stick [his] neck out" for Defendant and decided to continue the hearing until November, after Defendant had served one year in jail, at which time the court wanted a "halfway house lined up for [Defendant] to transition into."  The court informed Defendant, "you're going to be supervised by Enhanced.  You're going to go through DRC and complete that program.  If you fail to complete DRC, that's a violation, you're going to prison." [2]  Defendant answered that he understood.  The trial court warned Defendant, "you're going to have one shot and one shot only.  Fair enough?"

At the next sentencing hearing date on November 2, 2023, the trial court ordered Defendant to serve a sentence of split confinement, noting that Defendant had already served one year in jail, with the remainder of the eight-year sentence to be served on enhanced probation.  The court then explained to Defendant that he would "start [] out on Enhanced" supervised probation and be "step[ped] down to regular probation" if he "d[id] well."  The trial court gave Defendant the phone number for the court liaison and instructed Defendant to call her "[a]s soon as [he was] transported to Ep[p]erson Ministries" to schedule an intake appointment.  The court told Defendant, "You are to follow the rules of probation as explained by your probation officer.  What they instruct you to do is no different than if the words had come out of my mouth."  The court further warned Defendant to "follow the rules of th[e] facility.  If they discharge you, that's a violation of your probation. Understood?"  Defendant replied, "Yes, sir."

A probation violation warrant was issued on January 24, 2024, alleging that Defendant had changed his residence on or about December 24, 2023, and failed to provide his probation officer with a new address.  The warrant alleged that Defendant's whereabouts were unknown.  It further alleged that Defendant had failed to report on

---

[2] The record indicates that DRC is the Day Reporting Center.

January 4, 2024. Finally, the warrant alleged that Defendant "was discharged from Epperson Ministries before completing the program."

On April 17, 2024, Defendant appeared before the court for a probation revocation hearing, at which time the court appointed counsel to represent Defendant. The trial court commented, "Didn't I stick my neck way, way, way, way out for him in this case?" Defense counsel requested that the matter be reset to allow time "to determine whether we're going to be arguing the violation itself or just the sentencing. . . . I believe it's going to be the latter." The court responded, "Yeah, absconding is not real hard to prove."

Defendant appeared again before the court on April 29, 2024, and defense counsel announced that Defendant would "submit to the violation as far as absconding and then we'll argue what we think the appropriate sentence would be." The trial court questioned Defendant about his understanding of his right to a hearing on the violation, and Defendant acknowledged that he wished to waive a hearing and admit the violation. The court again noted that it "stuck [its] neck way out for [Defendant]" and reset the matter for sentencing. At the subsequent sentencing hearing, Defendant's probation officer, Paula Bothof, testified that Defendant was placed on probation on November 2, 2023, "after serving a one-year split confinement." Defendant was ordered to complete a program at Epperson Ministries halfway house. Defendant reported for intake and had a "successful" home visit on November 7, 2023. Defendant also reported as instructed on November 15, December 4, and December 13. Defendant failed to report on January 4, 2024. On January 8, 2024, Ms. Bothof contacted Epperson Ministries and was informed that Defendant was discharged from the program on December 24, 2023, "for displaying aggressive behavior toward another client at the halfway house."[3] Ms. Bothof attempted to locate Defendant but was unable to obtain a "good address[]" for him, "so therefore he became an absconder from probation." On cross-examination, Ms. Bothof acknowledged that Defendant did not incur any new criminal charges between his release in November 2023 and his arrest in April 2024.

No other witnesses testified at the hearing. The State asked the court to order Defendant to serve his sentence incarcerated, stating, "You can't comply with probation if you can't report. He was given the opportunity to go to this ministry program. He did not take advantage of that and then he absconded." Defense counsel asked the court to order Defendant "to go into the DRC program." Defense counsel stated that Defendant "did submit to the violation. That's a very low burden to prove absconding." Counsel averred that Defendant "was suddenly homeless without any means of communication and just the clothes on his back" and that he "lived on the street" until he was arrested but that he had

---

[3] The transcript of the hearing incorrectly states that Defendant was discharged on December 24, 2024; however, the warrant and affidavit state the year was 2023.

"maintained his sobriety and stayed out of trouble." The trial court gave Defendant an opportunity to make a statement, and Defendant acknowledged his past record but stated, "I'm not that person no more. I really am not that person anymore." Defendant continued,

> And I am ashamed. When I was kicked out of the halfway house, I couldn't believe that that circumstance had come about on me. I was blindsi[d]ed and I was so ashamed because I knew I was going to come back in front of you and I was completely ashamed of myself. So I just sat down on the curb and waited to be picked up.

The trial court commented that Defendant "received a significant break" on his original sentence given Defendant's criminal history, and the court stated that it had "wanted to give [Defendant] that shot" at rehabilitation despite Defendant's history of violating probation and despite the Strong-R assessment's conclusion that Defendant had a "high risk for violence." The court expressed its disappointment that Defendant "avoided the problem" rather than contacting his probation officer. The trial court revoked Defendant's probation and ordered Defendant to serve the balance of his sentence in confinement. The court entered a written revocation order confirming its judgment and recommending that Defendant be placed within the DeBerry Special Needs Facility due to his history of mental health issues. It is from this order that Defendant timely appeals.

*Analysis*

On appeal, Defendant asserts that the probation violation affidavit and warrant do not support a finding that he absconded, and therefore, the trial court erred in finding that he committed a non-technical violation of his probation. He asks this Court to vacate the trial court's order and remand the case for a new revocation hearing, or alternatively, find that his probation violation was technical and reinstate him to supervised probation. The State argues that the trial court properly revoked Defendant's probation because the warrant provided notice of a non-technical violation. Additionally, the State argues, Defendant admitted that he absconded.

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Generally, discretion is abused when the trial court applies "incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Id.* at 758 (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)).

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. "The first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id*. at 757. If a trial court finds by a preponderance of the evidence that a defendant violated his or her probation, then it is within the trial court's discretionary authority to revoke probation under the first step. T.C.A. § 40-35-311(e)(1), (2); *Dagnan*, 641 S.W.3d at 757 n.4; *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005).

In determining the appropriate consequence under the second step, a trial court may consider the nature and seriousness of the violation, the number of prior revocations, the defendant's criminal history, and amenability to continued probation. *Dagnan*, 641 S.W.3d at 759 n.5 ("consideration of past criminal history is only appropriate in the second part of the two-step analysis"). Factors relevant in demonstrating a defendant's amenability to continued probation include a defendant's acceptance of responsibility and expressions of genuine remorse, and the likelihood of complying with orders designed to further or accomplish a defendant's rehabilitation. *State v. Owens*, No. E2021-00814-CCA-R3-CD, 2022 WL 2387763, at *5 (Tenn. Crim. App. July 1, 2022), *no perm. app. filed*. "The primary purpose of probation sentence, however, 'is rehabilitation of the defendant,' and the conditions of probation must be suited to this purpose." *State v. Holmes*, No. M2020-01539-CCA-R3-CD, 2022 WL 2254422, at *16 (Tenn. Crim. App. June 23, 2022) (quoting *State v. Burdin*, 924 S.W.2d 82, 86 (Tenn. 1996)), *no perm. app. filed*.

"If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to [section] 40-35-310." T.C.A. § 40-35-311(d)(1). The probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both. A non-technical violation allows the trial court to revoke probation and order a defendant to serve his or her sentence when the court finds "by a preponderance of the evidence, that the defendant has committed a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." *Id*. § -311(e)(2). Technical violations include any "act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting the defendant's victim in violation of a condition of probation." *Id*. § -311(g).

[W]hen a defendant is on probation for a felony offense and commits a technical violation of probation, the trial court's authority to order an

- 6 -

incarcerative sanction is restricted based on the number of previous "revocations." As such, a court may not order a felony probationer to serve the remainder of the sentence as the consequence of a technical violation until he or she is subject to a "fourth or subsequent revocation." Tenn. Code Ann. § 40-35-311(e)(1).

However, when any probationer commits a non-technical violation, a trial court's authority to impose a consequence for that violation is broad. Indeed, the trial court may fully revoke a suspended sentence for a non-technical violation, even if the probationer has not previously violated the terms and conditions of the suspended sentence. *See generally* Tenn. Code Ann. § 40-35-311(e)(2) (Supp. 2021).

*State v. Rand*, 696 S.W.3d. 98, 103-04 (Tenn. Crim. App. 2024).

Although "[a]bsconding" is not defined in the Tennessee Criminal Sentencing Reform Act of 1989, *see* T.C.A. § 40-35-101 et seq., this Court has defined "abscond" as "[t]o go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed, in order to avoid their process. To hide, conceal, or absent oneself clandestinely, with the intent to avoid legal process." *State v. Munn*, No. W2022-00675-CCA-R3-CD, 2023 WL 2607676, at *4 (Tenn. Crim. App. Mar. 23, 2023) (citation omitted).

As to the first step in *Dagnan*, Defendant does not contest the trial court's decision to revoke his probation. Rather, he argues that the trial court erred in finding that he absconded, a non-technical violation, because the violation warrant only alleged technical violations. Additionally, Defendant argues, even if the warrant had charged absconding, the State failed to prove that Defendant absconded. The State argues that the violation warrant charged Defendant with the non-technical violation of absconding, that Defendant admitted to the violation, and that the record supports the trial court's finding that Defendant absconded.

In the affidavit in support of the violation warrant, the box is checked that states, "Pursuant to TCA 40-35-311(d), at least one of the violations below meets the definition of a zero-tolerance violation as defined by the Department of Correction Community Supervision Sanction Matrix; therefore, it is not considered a 'technical' violation." Although the word "absconded" does not appear anywhere in the warrant or supporting affidavit, the warrant alleged that a violation of "Rule 5" that provided Defendant would request permission from his probation officer before changing addresses. The warrant alleged that Defendant changed residences on December 24, 2023, that he did not inform his probation officer, and that his whereabouts were unknown to the officer. The warrant also alleged a violation of "Rule 6" that provided Defendant would allow his probation

officer to visit his residence and that Defendant would report to his probation officer as instructed. The warrant alleged Defendant failed to provide the officer with an address and failed to report. Finally, the warrant alleged a violation of "Rule 10" that provided Defendant would observe any special conditions imposed by the court by having been discharged from Epperson Ministries before completing the program.

Our reading of the warrant shows that it charged Defendant with the non-technical violation of absconding. Furthermore, the record supports the trial court's finding that Defendant absconded while on probation. Defendant failed to comply with the special condition that he successfully complete the treatment program at Epperson Ministries. Defendant was discharged on December 24, 2023, and thereafter, he never reported or contacted his probation officer, and his whereabouts were unknown until his arrest in April 2024. At a hearing on April 29, 2023, defense counsel informed the court, "He is going to submit to the violation as far as absconding and then we'll argue what we think the appropriate sentence would be." Defendant then waived a hearing and admitted that he violated probation. From all of this, the trial court concluded that Defendant absconded, and Defendant has not shown that the court abused its discretion. *See State v. Cody*, No. E2023-01535-CCA-R3-CD, 2024 WL 4468265, at *5 (Tenn. Crim. App. Oct. 10, 2024) (affirming the trial court's finding that the defendant absconded after failing to report to or contact his probation officer).

As for the second step in *Dagnan*, the consequence of the revocation, because Defendant committed a non-technical violation of probation, the full revocation of his suspended sentence was within the broad range of consequences that the trial court could properly consider. The trial court was statutorily authorized to order Defendant to serve the remainder of his eight-year sentence in confinement. *See* T.C.A. § 40-35-311(e)(2). The court emphasized Defendant's extensive criminal history, which included fourteen prior felony convictions and sixteen prior misdemeanor convictions, and a history of failure to comply with the conditions of a suspended sentence. The presentence report showed that Defendant's probation had twice been revoked in prior cases. Defendant had several department of correction disciplinary infractions, including a positive drug screen in 2019, and several Knox County Jail infractions, including two instances of fighting. Defendant's Strong-R assessment showed a high risk of aggression. The trial court commented that "[a] lot of work was put into the initial decision" to place Defendant on supervised probation, and the court stated, "in order to make the system work, there has to be accountability when I say there's going to be accountability." The court made sufficient findings to support its decision to order Defendant to serve the remainder of his sentence in confinement.

- 8 -

Based on the record, we conclude that the trial court did not abuse its discretion in in revoking Defendant's probation and ordering him to serve the balance of his sentence in confinement.  He is not entitled to relief.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.


<u>s/Timothy L. Easter</u>
TIMOTHY L. EASTER, JUDGE